1  BYERS IP LAW & CONSULTING
   STEPHEN BYERS #223330
2  12130 Ohio Ave, Suite 304
   Los Angeles, CA 90025
3  Telephone: (424) 234-3546
   Facsimile: (888) 234-3546
4  Email: Sbyers@ByersIPLaw.com

5  Attorneys for Plaintiff
   TROY-CSL LIGHTING, INC.
6

7

FILED
CLERK, U.S. DISTRICT COURT
NOV 27 2013
CENTRAL DISTRICT OF CALIFORNIA
BY                      DEPUTY

8            UNITED STATES DISTRICT COURT
9             CENTRAL DISTRICT OF CALIFORNIA
10                    WESTERN DIVISION

| | |
|---|---|
| TROY-CSL LIGHTING, INC., | Case No. CV 13-8834 |
| Plaintiff, | **COMPLAINT FOR:** |
| vs. | (1) FEDERAL TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT § 43(a); |
| BATH KITCHEN DÉCOR, LLC, DAVID TROPPER and LARRY KRAYZMAN, | (2) FALSE ADVERTISING AND UNFAIR COMPETITION UNDER THE LANHAM ACT § 43(a); |
| Defendants. | (3) UNFAIR COMPETITION UNDER CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200; |
| | (4) INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIPS |
| | (5) TRADEMARK COUNTERFEITING UNDER THE LANHAM ACT § 43(a) |

Plaintiff, TROY-CSL LIGHTING, INC., ("Troy" or "Plaintiff") for its complaint avers as follows:

## INTRODUCTION

This is a complaint for trademark infringement, trademark counterfeiting, false advertising, unfair competition, and intentional interference with business relationships. Defendants ROBERT TROPPER, LARRY KRAYZMAN ("Krayzman"), and their business entity BATH, KITCHEN DÉCOR, LLC ("BKD"), (collectively, "Defendants") have sold and advertised for sale unauthorized lighting products allegedly produced by Plaintiff TROY-CSL LIGHTING, INC. Defendants conduct such activities while using Troy's federally registered trademarks, without authorization, to willfully and intentionally confuse consumers into believing an association exists between Defendants and Troy. Additionally, the products and services provided by the Defendants are materially different from the genuine products, and services provided by Troy and Troy's authorized distributors, thus Defendants' products are counterfeit. Further, their actions have interfered with the business relationships Troy has with its authorized distributors and constitute unfair business practices.

## JURISDICTION AND VENUE

1. This is a civil action for trademark infringement arising under the Lanham Act, 15 U.S.C. § 1125 (a), pursuant to which this Court has jurisdiction under 15 U.S.C. § 1121. This is also a civil action for relief and damages for false advertising arising under the Lanham Act, 15 U.S.C. § 1125 (a), pursuant to which this Court has jurisdiction under 15 U.S.C. § 1121. This Court has jurisdiction over the subject matter of this action based upon 28 U.S.C. §§ 1331 and 1338(a) and (b), providing for federal question jurisdiction of trademark infringement actions and exclusive jurisdiction of trademark infringement actions in the U.S. district courts. This Court has jurisdiction over any remaining claims in this action pursuant to the doctrine of supplemental jurisdiction and 28 U.S.C. § 1367.

2. Plaintiff Troy is informed and believes, and thereon alleges, that venue in this Court is proper under 28 U.S.C. § 1391(b) because the acts of trademark infringement, trademark counterfeiting, unfair competition, false advertising, and intentional interference with business relationships alleged herein were engaged in within this judicial district, and the both the Plaintiff and Defendants do business within this judicial district.

## PARTIES

3. Plaintiff Troy is a corporation organized and existing under the laws of the State of New York and having a principal place of business at 106 Pierces Road, Newburgh, New York 12550. Troy sells and promotes light fixtures in this judicial district. Troy also has a place of business at 14508 Nelson Ave, City of Industry, California 91744.

4. On information and belief, Defendant Tropper is an individual who is listed as the "organizer" and agent for service of process for Bath Kitchen Décor LLC. Tropper's listed address, as agent for service of process, is 185-12 Union Turnpike, Fresh Meadows, New York 11366. On information and belief, Tropper resides at 8425 Abingdon Road, Kew Gardens, New York, 11415.

5. On information and belief, Defendant Krayzman is listed as an owner of Bath Kitchen Décor LLC, and he resides at 1463 Ocean Ave, Apt. 4F, Brooklyn, New York 11230.

6. On information and belief, Defendant Bath Kitchen Décor LLC is a New York limited liability company, created by Defendants Tropper and Krayzman, having its principle place of business at 2918 Avenue J, 2nd Floor, Brooklyn, New York 11210. On information and belief, BKD sells and promotes light fixtures in this judicial district.

7. On information and belief, Defendant BKD is an alter ego of Defendants Tropper and Krayzman. On information and belief, Defendant

BKD has never issued stock, has held no board meetings, and has kept no corporate minutes. On information and belief, Defendant BKD has failed to observe the most basic of corporate formalities. Upon information and belief, Defendants Tropper and Krayzman are the individuals that made the specific decisions to use Troy's marks in an unauthorized manner on Defendants' websites and made additional decisions and took additional actions in furtherance of the trademark infringement and other and related claims in this Complaint.

8. On information and belief, Defendant Krayzman is listed as the registered contact for the websites www.bathkitchendecor.com, www.designersupplyhouse.com, www.lightingshowhouse.com, and www.eagleslighting.com which display the infringing activity and are the source of other related claims in this Complaint.

9. On information and belief, Defendants have committed the acts alleged herein in this state and this judicial district.

## TROY'S TRADEMARKS AND DEFENDANTS' INFRINGING WEBSITES

10. Troy has designed, manufactured, advertised, and wholesaled thousands of high-end, unique lighting fixtures and other design lighting products for over 20 years. It sells its products under its TROY LIGHTING marks through various high-end distributors. All of Troy's distributors are trained and required to provide sophisticated stores and websites which reflect the high-end quality of the Troy brand. Each of these stores and websites are vetted and approved by Troy employees before any request to be an authorized distributor is approved. In addition, Troy's authorized distributors are contractually required to provide exceptional customer service, including providing a toll-free number on the top of every webpage and having

dedicated customer service representatives available from 8:00 a.m. - 8:00 p.m. EST for a minimum of five days a week. Troy's authorized distributors are contractually forbidden from selling, drop shipping, or in any way transferring Troy product to, or for, an unauthorized distributor who has not signed a distributor agreement with Troy and agreeing to the same terms. Doing so ensures Troy's ability to control the quality of customer satisfaction with the Troy product and buying experience, and the goodwill of Troy.

11. It is important that consumers buy Troy products directly from authorized distributors actually affiliated with Troy because such distributors are trained regarding the Troy products, and consumers who purchase products, and must make exchanges or returns or get replacement parts for their Troy products, must do so directly from the distributor or retailer where they bought the product, and where the customer will receive excellent customer service. Moreover, Troy's manufacturer warranty is extended only to Troy's authorized distributors and customers. Should customers have problems with the retailer, Troy will provide assistance to customers under the warranty, provided they bought the product from an authorized distributor.

12. As a testament to Troy's recognition and reputation for high-end lighting fixtures, Troy's sales in California alone are approximately $2,000,000. Additionally, Troy has approximately 2500 authorized distributors nationwide.

13. On October 21, 2008, Troy was awarded U.S. Trademark Registration No. 3,520,415 for the word mark "CSL" for use with electrical lighting apparatus ("the '415 mark") (see Exhibit A).

14. On February 8, 2005, Troy was awarded U.S. Trademark Registration No. 2,924,876 for the word mark "COUNTER ATTACK" for use with electrical lighting fixtures ("the '876 mark") (see Exhibit B).

15. On June 26, 2007, Troy was awarded U.S. Trademark Registration No. 3,257,013 for the word mark "ABEO" for use with electrical lighting fixtures ("the '013 mark") (see Exhibit C).

16. Troy has spent approximately $15,000,000 over the last five years in advertising, promotional activities, trade shows, and conventions promoting its Troy products using the '415, '876, and '013 marks, as well as its Troy Lighting and Troy-CSL Lighting marks. As a result, Troy and its marks have become highly famous and enjoy widespread consumer recognition and substantial goodwill.

17. Due to Troy's significant time and resources expended promoting and enforcing its brand and marks, customers identify lighting fixtures sold under the '415, '876, and '013 marks (collectively, "the Troy marks"), as well as through products sold under the "Troy Lighting" and "Troy-CSL Lighting" marks as being the high quality products of Troy.

18. It recently came to Troy's attention that the Defendants owned, operated, and/or controlled several websites, including but not limited to, www.bathkitchendecor.com, www.designersupplyhouse.com, www.lightingshowhouse.com, and www.eagleslighting.com (collectively, "Defendants' websites"). On these websites, the Defendants offer to sell thousands of purported Troy lighting fixtures (sample screenshots are attached as Exhibit D), utilizing Troy's marks, official Troy photographs, Troy's manufacturing numbers, and descriptions of the products which it make it appear that the Defendants' websites are sponsored or otherwise affiliated with Troy or Troy's authorized distributors. The Defendants further falsely advertise that the "manufacturer ships the merchandise directly to our customer or we bring the merchandise into our warehouse and ship them back out to our customers on the day we receive the product. Once an order ships from the manufacturer to our facility we can no longer cancel this order …"

(See Exhibit E). Troy does not drop ship orders directly to customers, nor has Troy ever shipped anything to any of the Defendants.

19. Defendants' websites have a minimalist and shoddy appearance, in contrast to Troy's authorized distributors. Defendants' websites do not offer the same exchange, return, and warranty policies as provided by authorized distributors. They do not have a dedicated customer support representative and hundreds of complaints have been made against them regarding their customer service (see Exhibit F). Even the Better Business Bureau of New York has documented 31 complaints against BKD and they have a BBB rating of "F" (See Exhibit G). This is completely contrary to the exceptional services extended by Troy's authorized representatives and which Troy authorized distributors are contractually obligated to extend. Accordingly, the services provided by Defendants are negatively and materially different from those provided by Troy authorized distributors that offer genuine Troy products, thereby confusing customers and damaging Troy's image, reputation, and brand in the process.

20. Defendants warranty is not the same as the warranty provided by Troy's authorized distributors, the services provided by the Defendants are not the same as that required by Troy's authorized distributors, and on information and belief, Defendants have removed Troy's Quality Control label from boxes of shipped Troy lighting fixtures. Each of these acts constitutes the trafficking in counterfeit goods, as the goods are negatively and materially different than those provided by Troy through their authorized distributors.

21. On information and belief, Defendants use a business model in which the Defendants must try to find illegal avenues to purchase Troy products only after a consumer attempts to buy it. This results in significant delays in product delivery by what the customer is, confusingly, led to believe is an Authorized Representative of Troy. The delay in receiving product

impacts the ability of Troy to control the quality of the services provided under its marks and damages Troy's reputation, brand, and image, by causing consumers to believe such behavior is sanctioned by Troy when it is not.

22. On Defendants' websites, customers are not informed of Troy's warranty program. Nor are they informed that Troy's manufacturer warranty does not extend to them because Defendants are not authorized distributors. Because the Defendants' products do not come with the Troy warranty, they are negatively and materially different from the genuine products sold by Troy's authorized distributors. Accordingly, Defendants are selling counterfeit products with Troy marks.

23. On information and belief, because of Defendants' business model, they do not have replacement products or parts in stock, and must source them from illegal avenues once a problem arises. This causes long delays in the customer receiving replacement products or parts if a customer must return a defective product. Because Troy's warranty does not apply to Defendants' products, those customers cannot turn to Troy to assist them in replacing the product or parts, and the customer is at the mercy of the unauthorized Defendants to make them whole. As noted above, complaint websites are rife with customers documenting Defendants' incomparably poor customer service and the inability of customers to find replacement products or parts. Such circumstances, created by the Defendants' behavior, damages Troy's brand, image, and reputation.

24. A quick review of ratings websites show that Defendants' websites are notoriously bad at providing customer service. Those customer complaint websites document the copious problems customers have had with Defendants' websites for difficulties with exchanges, returns, broken products, and long delays in receiving product in the first place.

25.  These actions (or inactions) by the Defendants are likely to cause confusion to consumers and harm to Troy's brand, image, and reputation, because customers and the public are left to believe that, by the use of Troy's registered and common law trademarks, official Troy photographs, and official product descriptions, Troy endorses or is otherwise affiliated with such actions when it is not. Moreover, the products they sell are materially different in the goods and services provided by Troy and its authorized representatives under the Troy's registered and unregistered trademarks.

26.  Defendants are, and have been, aware of Troy's marks by Troy's marking the marks with a registered "circle R" (®) on catalog labeling and its website. Additionally, Defendant Krayzman, and Defendant BKD, have received several phone calls and emails from Troy, as well as correspondence from Troy's attorneys, wherein they have been informed of Troy's marks and Defendants' infringement thereof, claims of false advertising, counterfeit marking, and the other claims in this Complaint (see for example, Exhibit H). Thus, Defendants actions have been willful.

27.  Upon information and belief, Defendants Tropper and Krayzman are the majority owners and lead decision makers of Defendant BKD and the owners of www.bathkitchendecor.com, www.designersupplyhouse.com, www.lightingshowhouse.com, and www.eagleslighting.com. On information and belief, Defendants Tropper and Krayzman are the individuals that made the specific decision to use the Troy marks on their websites and made additional decisions and took additional actions directly in furtherance of the trademark infringement and other related claims in this Complaint. Thus, Defendants Tropper and Krayzman are individually liable for these actions.

28.  Defendants' many uses of Troy's marks, both registered and unregistered, and other confusingly similar or exact duplicates of Troy's marks, especially when combined with Defendants' use of official images and

product descriptions infringe upon Troy's federally registered trademarks (and, in common law, its unregistered trademarks) in that those uses cause confusion regarding the relationship, affiliation, or sponsorship of Defendants and Troy. If Defendants are allowed to continue their wrongful activities, consumers will continue to be confused into believing that they are buying products from and dealing with Troy or an authorized Troy representative, when they are not. Defendants actions (or inactions), as stated above, confuse customers into buying products which are materially different from Troy's genuine products, and are therefore counterfeit, and further damage Troy's brand, image, and reputation, in addition to constituting trademark infringement (both under the Lanham Act and common law) and unfair competition.

## DEFENDANTS' INTERFERENCE WITH TROY'S BUSINESS RELATIONSHIPS

29. On information and belief, Defendants' actions and business model require that they purchase Troy products from authorized dealers. In doing so, those authorized defendants must breach their contract with Troy to provide Defendants with Troy products because those authorized dealers are contractually prohibited from doing so.

30. Defendants flaunt the requirements of Troy's authorized distributor contract. Defendants' websites are not of the quality that Troy allows to be an authorized dealer. Defendants do not provide the level of customer support required of Troy's authorized dealers. This leads distributors, both current and prospective, to believe that there is little reason to become authorized distributors and to reconsider performing the actions required according to Troy's distributor contract. It also causes authorized distributors to reconsider before deciding to re-sign as an authorized

1  distributor, and further prompts other potential authorized distributors to forgo
2  becoming an authorized distributor at all.
3       31.   Troy has received numerous complaints from authorized
4  distributors regarding the actions of Defendants and inquiries as to why the
5  Defendants are not held to the same standards as other authorized distributors
6  and the Troy distributor contract (See Exhibit I).
7       32.   These actions thus interfere with Troy's business relationships,
8  both existing and prospective.
9       33.   The actions of the Defendants constitute trademark infringement,
10 false designation of origin, and counterfeiting of Troy's marks, as well as false
11 advertising, unfair competition, and intentional interference with business
12 relationships.

### FIRST CAUSE OF ACTION
### (Trademark Infringement – 15 U.S.C. §1125(a))

15      34.   Troy incorporates by reference paragraphs 1 through 33 above as
16 if fully set forth herein.
17      35.   Troy owns U.S. Trademark Registration Nos. 2,924,876,
18 3,520,415, and 3,257,013 for the word marks "COUNTER ATTACK,"
19 "CSL," and "ABEO," respectively (collectively, "Troy's marks"), for use in
20 marketing and selling electrical lighting fixtures.
21      36.   Defendants are not licensed or otherwise authorized to use Troy's
22 marks.
23      37.   Defendants have used Troy's marks in marketing and selling
24 allegedly new, authorized, and genuine Troy electrical lighting fixtures.
25      38.   Defendants knew or had reason to know of Troy's ownership of
26 Troy's marks.
27
28

39. Defendant's uses of the above terms are likely to cause confusion and the mistaken belief that Defendants are authorized agents of Troy as they are confusingly similar to Troy's marks.

40. Defendants' conduct constitutes trademark infringement or false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125 (a).

41. Defendants' conduct is willful and in bad faith.

42. Defendants will continue their infringing conduct unless enjoined by this Court.

43. Defendants' infringement has caused and is causing irreparable harm to Troy, for which Troy has no adequate remedy at law.

44. Troy has been damaged by defendants' infringement and, unless and until an injunction issues, will continue to be damaged in its business, reputation, and property in an amount yet to be determined, but at least $5,000,000.

45. As a direct and proximate result of Defendants' actions, Troy is entitled to an award of three times its actual damages, the profits of defendant, and reasonable attorneys fees and costs pursuant to 15 U.S.C. §§ 1117 and 1125.

## SECOND CAUSE OF ACTION

### (False Advertising – 15 U.S.C. § 1125(a))

46. Troy incorporates and realleges Paragraphs 1-45 above, as if fully set forth herein.

47. Troy alleges that Defendants have disseminated advertising materials which are untrue and/or misleading, and have used a false designation of origin as to their Troy products in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

48. Among other things, Defendants have marketed and distributed allegedly genuine Troy products interstate on the Internet and in this judicial district with statements indicating a connection between Troy and the Defendants when they are not.

49. Defendants' statements are false statements of fact about their affiliation, association, or sponsorship with Troy which misrepresents the nature, qualities, and services associated with the products that Defendants sell.

50. Because of Defendants' false statements, consumers are likely to be deceived into believing that Defendants and the products they sell and the services they provide are authorized by Troy.

51. Troy is harmed by Defendants' false statements because (1) consumers, being deceived, purchase Troy products from Defendants instead of actual authorized Troy distributors, thereby undermining Troy's authorized distributorship program and the quality and reputation that such program brings, and (2) consumers doubt the quality that Troy presents because they believe Troy authorizes shoddy websites, poor customer service, and refuses to provide a manufacturer warranty, which reflects upon the quality of products and services Troy provides.

52. Defendants acts complained of herein have been committed willfully and with knowledge that such conduct falsely describes the association, affiliation, and/or sponsorship between Troy and the Defendants, with the intent to cause confusion, and mistake, or to deceive the public.

53. On information and belief, Defendants threaten to continue the conduct complained of herein, and unless enjoined, will continue such conduct causing irreparable harm to Troy for which Troy has no adequate remedy at law. Troy has also suffered damages for this conduct in an amount yet to be determined, but upon information and belief is at least $5,000,000.

54. As a direct and proximate result of Defendants conduct, Troy is entitled to damages and a preliminary and permanent injunction enjoining and restraining Defendants and their respective agents, assigns, and heirs from engaging in the aforesaid acts.

### THIRD CAUSE OF ACTION

**(Unfair Competition – Cal. Bus. & Prof. Code § 17200 et. seq.)**

55. Troy repeats, realleges, and incorporates by reference, as though fully set forth herein, the allegations set forth in paragraphs 1 through 54 above.

56. The acts of Defendants, including but not limited to trademark infringement and false advertising violate Section 17200 et seq. of the California Business and Professions Code, which prohibits any unlawful, unfair, or fraudulent business practices or act, and any unfair, deceptive, false, or misleading advertising.

57. Defendants will continue their unfair competition unless enjoined by this Court.

58. Defendants' unfair competition has caused and is causing irreparable harm to Plaintiff, for which Plaintiff has no adequate remedy at law.

### FOURTH CAUSE OF ACTION

**(Intentional Interference with Prospective Economic Advantage)**

59. Troy incorporates and realleges Paragraphs 1-58 above, as if fully set forth herein.

60. Troy alleges that Defendants wrongfully, unjustifiably, and intentionally interfered with Troy's business relations and prospective economic advantage in violation of California common law.

61. Troy has an economic relationship with many current California-based and other distributors and with prospective customers, with whom, on information and belief, Defendants are, or were in the process of, negotiating sales and relationships, and/or otherwise disrupting contractual relationships which Troy has in place.

62. By violating Troy's distributor agreement, and encouraging others to do so, the Defendants interfere with Troy's current and prospective business relationships.

63. To the extent that Defendants have encouraged Troy's authorized distributors to sell Troy products to Defendants, and thereby violate the Troy distributor agreement, Defendants have interfered with Troy's current business relationships.

64. Troy's business relationships entail the probability of future economic benefit and advantage to Troy in that these customers and potential customers provide Troy with the opportunity to distribute their products on a nationwide scale and who will endorse and promote Troy to others through their accounts of their positive experience with Troy and their authorized distributors.

65. Defendants, at all times, have been aware of these economic relationships.

66. Defendants have intentionally engaged in conduct designed to interfere with or disrupt these economic relationships, including using Troy's marks, and other malicious aforementioned acts to solicit these customers and potential customers, and inducing or attempting to induce these customers/potential customers and distributors/potential distributors to end their relationship with Troy and its authorized distributors by falsely representing to these customers and authorized distributors that Defendants can provide Troy products without providing the customer support and other

1 quality control measures required of authorized distributors. Defendants'
2 encouragement of Troy's authorized distributors to violate the Troy distributor
3 agreements further interferes with Troy's business relationships. This conduct
4 by Defendants is wrongful independent from the acts of interference
5 themselves.

6   67.   Troy alleges that this conduct by Defendants has interfered with
7 or disrupted Troy's economic relationships with its authorized distributors,
8 customers and potential distributors/customers so that existing and potential
9 business created by Troy's solicitation, promotion, and other efforts have been
10 diverted to Defendants, Troy's distributor and customer base has been eroded,
11 and Troy's reputation and goodwill have been injured.

12   68.   As a proximate result of Defendants' actions, Defendants have
13 damaged Troy in an amount not presently ascertainable, but upon information
14 and belief, is to be at least $5,000,000.

15   69.   On information and belief, Troy alleges that Defendants' actions
16 as alleged were undertaken in bad faith, oppressively, and maliciously, such
17 that Troy is entitled to an award of exemplary damages in an amount sufficient
18 to punish and deter such conduct by Defendants in the future pursuant to Cal.
19 Civ. Code § 3294.

20   70.   Defendants threaten to and unless restrained, will continue to
21 utilize Troy's marks to Troy's great and irreparable injury, for which damages
22 would not afford adequate relief, in that they would not completely
23 compensate Troy for the injury to its reputation and goodwill. Further,
24 Defendants threaten to, and if not restrained, will continue to encourage
25 authorized distributors to break their contract with Troy by supplying
26 Defendants with Troy products to Troy's great and irreparable injury, for
27 which damages would not afford adequate relief, in that they would not
28 completely compensate Troy for the injury to its reputation and goodwill.

## FIFTH CAUSE OF ACTION

### (Trademark Counterfeiting -- 15 U.S.C. § 1114)

71. Troy incorporates and realleges Paragraphs 1-70 above, as if fully set forth herein.

72. Defendants, without authorization from Troy, have and continue to use, spurious designation for their goods and services that are identical to or substantially indistinguishable from the Troy's marks.

73. These products and services are materially different from genuine Troy products promoted under the Troy's marks.

74. Troy has continuously marked its products and internet website with the "circle R" (®), giving notice that Troy's marks are federally registered.

75. Defendants' wrongful use of such marks, which are counterfeit marks, are intended to confuse the public into believing that Defendants and Troy are affiliated, and such acts constitute trademark counterfeiting under the Lanham Act.

76. Defendants' actions have been taken willfully and with deceptive intent.

77. Defendants' unlawful conduct has caused and will continue to cause, great immediate and irreparable harm to Troy's business reputation, injury to its goodwill, and pecuniary damages.

78. By reason of the foregoing, Troy is entitled to (a) statutory damages in the amount of $1,000,000 for each mark counterfeited as provided by 15 U.S.C. 1117 (c) of the Lanham Act, or at Troy's election, an amount representing three (3) times Troy's damages or Defendants' profits; and (b) reasonable attorney's fees, investigative fees, and prejudgment interest pursuant to 15 U.S.C. § 1117(b).

## PRAYER FOR RELIEF

WHEREFORE, Troy prays for relief and judgment from this Court:

a. That the Court enter judgment in favor of Troy and against Defendants;

b. That Defendants be preliminary and permanently enjoined from using Troy's marks, and all marks confusingly similar thereto in conjunction with the promotion, marketing, offering for sale, or sale of electrical lighting fixtures;

c. That Defendants be enjoined from engaging in unfair competition;

d. That Defendants be enjoined from engaging in false advertising, and in particular from claiming to be an authorized distributor of Troy, or in any other way confusing consumers into believing as such.

e. That Troy recover compensatory, incidental, and consequential damages for Defendants' conduct in an amount to be proven at trial, but at least $5,000,000, together with prejudgment interest thereon at the maximum legal rate, or in the alternative, that Troy be awarded statutory damages of $1,000,000 for each mark that the Defendants have willfully counterfeited and infringed;

f. That Defendants be ordered to pay punitive and exemplary damages in an amount to be proven at trial, together with prejudgment interest thereon at the maximum legal rate;

g. That Troy recover treble damages for trademark infringement;

h. That Troy recover its reasonable attorney's fees;

i. That Troy recover all unjust enrichment of Defendants;

1     j.     That the Court award Troy its costs of suit incurred herein; and

2     .     For such other and further relief as this Court deems proper and
3 just.

4

5 Dated: November 25, 2013          Respectfully submitted,

6                                         BYERS IP LAW & CONSULTING

7

8                                         By: _____
9                                             Stephen Byers

10                                         Attorneys for Plaintiff
11                                         TROY-CSL LIGHTING, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 19 -

TROY-CSL LIGHTING, INC v. BATH, KITCHEN, DÉCOR, LLC COMPLAINT
Case No. _____

1 <u>**DEMAND FOR JURY TRIAL**</u>

2 Pursuant to FED. R. CIV. P. 38(b), Plaintiff TROY-CSL LIGHTING,
3 INC. hereby demands a jury trial of all claims against Defendants.

5 Dated: November 25, 2013         Respectfully submitted,

6 BYERS IP LAW & CONSULTING

8 By: _____
9 Stephen Byers

10 Attorneys for Plaintiff
TROY-CSL LIGHTING, INC.